Filed 11/6/25  P. v. Lee CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>JONTEE TAVARE LEE,<br><br>    Defendant and Appellant. | F086870<br><br>(Super. Ct. No. F14902624)<br><br><br>**OPINION** |

### <u>THE COURT</u>\*

APPEAL from an order of the Superior Court of Fresno County.  Alvin M. Harrell III, Judge.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Eric L. Christoffersen, Amanda D. Cary, Ian Whitney, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P. J., Franson, J. and Snauffer, J.

## INTRODUCTION

Appellant and defendant Jontee Tavare Lee (appellant) was charged with the murder of Cameron Ireland, who was killed by a close contact gunshot wound to the left temporal region of his head.  In 2015, after the preliminary hearing, appellant pleaded no contest to voluntary manslaughter (Pen. Code,[1] § 192, subd. (a)) and admitted he personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).  He was sentenced to 16 years in prison.

In 2023, appellant filed a petition for resentencing pursuant to section 1172.6.  At the time of the prima facie hearing, appellate courts were divided on whether the preliminary hearing transcript was part of the record of conviction and could be relied on to make the prima facie determination.  The trial court found appellant was the actual killer and denied the petition.

On appeal, the parties' initial briefing addressed whether the trial court could have relied on the preliminary hearing transcript to make the prima facie determination.  This court ordered supplemental briefing after the California Supreme Court's decision in *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*), which held that when the court makes the prima facie determination, it may "rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory, checkbox allegations" made in a form section 1172.6 petition.  (*Patton*, at p. 564.)  *Patton* affirmed the court's denial of the section 1172.6 petition in that case, but granted the defendant's request to remand the matter to the court for the opportunity to file a supplemental petition consistent with the court's ruling.  (*Patton*, at pp. 569–570.)

In his supplemental briefing, appellant asserts an evidentiary hearing is still required after *Patton* because of factual inferences raised by the preliminary hearing

---

[1]     All further statutory citations are to the Penal Code.

evidence. In the alternative, appellant requests remand to file a supplemental petition as permitted in *Patton*.

We find the trial court correctly denied appellant's petition based on the record of conviction that was before it. As in *Patton*, we grant appellant's request to remand the matter for the opportunity to file a supplemental petition.

## PRELIMINARY HEARING EVIDENCE[2]

On the night of December 30, 2013, Joshua Fulcher was walking on Sixth Street in Fresno and heading to his car. He walked by the entrance to an alley and did not notice a body lying on the ground. Fulcher got into the driver's seat of his car, and saw a white car drive past him and turn into the alley. He heard a dragging noise that sounded like a body was being moved. Fulcher got out of his car, walked to the alley's entrance, and saw a body on the ground. Fulcher returned to the street and asked someone to call the police.[3]

At 10:27 p.m., detective Christopher Aranas responded to the area near Sixth and San Bruno Streets and found a man, later identified as Cameron Ireland, lying face down in the alley. Aranas turned Ireland onto his back and saw a gunshot wound in his left temple.

Detective Richard Tacadena attended the autopsy, and testified Ireland's cause of death was a close contact gunshot wound to the left temporal area of his head. "[Y]ou could see the impression of what would be the barrel on the entry wound or from the stippling or gunshot powder coming out of the gun when it was fired."

---

[2] The following facts are from the preliminary hearing held on October 14 and 15, 2014.

[3] Fulcher testified he did not actually see a body being removed from the car, but admitted he told an officer that he saw that happen. Fulcher testified he suffered from schizoaffective disorder and had trouble remembering things. He was on probation for a domestic violence conviction and had a pending case for another felony.

3.

**Initial Testimony from Baldwin and Tacadena**

Teresa Baldwin appeared at the preliminary hearing and testified she loved appellant and they had been in a relationship since 2011. They had one child and she was expecting their second child. Baldwin testified she learned about the homicide from the television news, and heard "on the street" that appellant was being investigated. She admitted she made certain statements to an officer about appellant and the homicide, but testified she lied about everything and she made her statements "all off of emotion."

Tacadena testified that on March 18, 2014, he conducted a recorded interview with Baldwin about Ireland's death. Baldwin was calm during the interview, and said she loved appellant. Baldwin made the following statements. Appellant called her on January 1, 2014, and said he was leaving town because he shot Ireland. Appellant said he was walking with Ireland when they encountered some Asians, who told them to leave the area or they would be harmed. Appellant and Ireland left the area, and appellant said they got into the backseat of a 2013 white Dodge Dart. Baldwin said she had been in that car on numerous occasions, and it belonged to a man known as "Jason" or "Anthony" and his girlfriend, and they were members of military in Lemoore. Appellant told Baldwin that he shot Ireland in the head, he laughed about it, and he pushed Ireland's body out of the vehicle.

Tacadena testified when Baldwin gave her statement, she talked about information that had not been released to the public, such as the make and color of the car, and that it belonged to two people who were in the military and stationed at Lemoore.

**Further Testimony from Baldwin and Tacadena**

After Tacadena's testimony about Baldwin's statement, the prosecutor recalled Baldwin. Baldwin testified that appellant called her on December 31, 2013, but she lied to the police that appellant said he shot Ireland. When she talked to the police, she was mad and hated appellant because he had custody of their child, and he left the child with a

4.

woman in a filthy house. Baldwin told the police about the dispute over their child and said appellant was a "lowlife."

Baldwin testified she knew "Jason" and his girlfriend, and they owned the white Dodge Dart. After she learned about the homicide, Baldwin was in the white Dodge Dart and saw a bullet hole and some "nasty" stuff on the backseat's interior ceiling. She asked "Jason" about it, and he said it was his fault.

Tacadena was also recalled as a witness, and testified that during his interview with Baldwin, she mentioned a dispute with appellant about their child, but she did not call him a "lowlife." Baldwin spoke in a fluid manner and without hesitation.

**Arrest of Appellant**

On March 18, 2014, detective Greg Jouroyan and officer Joshua Bowling conducted a traffic stop of a white Dodge Dart. Appellant was the driver and sole occupant, and he was taken into custody. Appellant was asked about the registered owner of the Dodge Dart. Appellant said he did not know, and claimed someone left the keys in the car, he jumped in, and drove away.

There was a bullet hole in the interior roof lining of the Dodge Dart, about two inches above the rear passenger-side window. DNA analysis showed that Ireland's blood was found on the car's rear door frame.

Tacadena testified the Dodge Dart was registered to Anthony Corneal and Ashley Sims, who were subsequently married. They had both been in the service and stationed at Lemoore.

Tacadena testified he showed photographs of Corneal and Sims to Baldwin, and she identified Corneal as "Jason" and said they were the owners of the Dodge Dart. At the preliminary hearing, however, Baldwin testified she never identified anyone from photographs.

5.

**Appellant's Postarrest Statements**

Detective Alfonso Castillo interviewed appellant after advising him of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, and appellant answered his questions. Appellant initially claimed he did not know Ireland and he was not involved in the killing.

Appellant eventually admitted that he knew Ireland, and he was with Ireland on the night that he died. Appellant said they were involved in a disturbance with Asian men. Appellant and Ireland left the area and got into the backseat of a white Dodge Dart that belonged to appellant's friend. Ireland was intoxicated.

Appellant said he had a gun in his waistband, and he got into a fight with Ireland in the backseat of the car. They were "tussling" and Ireland reached for appellant's gun because he wanted to use it against the Asian men. Appellant said he pulled his gun from his waistband and raised it, but he did not point the gun at Ireland. Appellant said the gun went off "for some unknown reason." " 'Just boom, it just went off.' " Appellant said the shooting was an accident and the bullet hit Ireland in the neck or shoulder area. After the shot was fired, Ireland fell out of the car and the driver drove away.

## PROCEDURAL BACKGROUND

On March 21, 2014, a complaint was filed in the Superior Court of Fresno County charging appellant with count 1, the murder of Ireland (§ 187, subd. (a)), with an enhancement that he personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)). The court held appellant to answer after the preliminary hearing.

On October 21, 2014, the information was filed that again charged appellant with murder and the enhancements that he personally and intentionally discharged a firearm proximately causing the victim's death (§ 12022.53, subd. (d)), and he personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)).

**Plea and Sentencing Hearings**

On February 19, 2015, the parties advised the trial court that appellant would enter into a negotiated disposition, plead no contest to an amended charge of voluntary manslaughter, and admit a firearm enhancement, for an aggregate sentence of 16 years.

Appellant signed a change-of-plea form that stated the factual basis for the manslaughter plea consisted of the police reports and the preliminary hearing evidence. At the plea hearing, the prosecutor and defense counsel stipulated the factual basis for the plea consisted of the police reports and the preliminary hearing evidence. The trial court asked appellant if he agreed with the stipulation, and appellant said yes.

The trial court advised appellant of his constitutional rights, and appellant said he understood and waived his rights. Appellant pleaded no contest to the amended count 1, voluntary manslaughter (§ 192, subd. (a)) and admitted he personally used a firearm (§ 12022.5, subd. (a)). The court dismissed the remaining firearm enhancement.

On March 18, 2015, the trial court sentenced appellant consistent with the negotiated disposition to an aggregate term of 16 years, based on the midterm of six years for voluntary manslaughter and a consecutive term of 10 years for the firearm enhancement.

## PETITION FOR RESENTENCING

On April 25, 2023, appellant filed, in propria persona, a section 1172.6 petition for resentencing of his voluntary manslaughter conviction, and requested appointment of counsel. Appellant filed a supporting declaration that consisted of a preprinted form where he checked boxes that (1) he was eligible for resentencing because a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) he was convicted of murder, attempted murder, or

7.

manslaughter following a trial, or accepted a plea offer in lieu of a trial in which he could have been convicted of murder or attempted murder; and (3) he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. The trial court appointed counsel.

**The People's Opposition**

The People filed opposition to the petition, with supporting exhibits consisting of the preliminary hearing and the plea hearing transcripts. The People argued appellant was ineligible for resentencing as a matter of law because the record of conviction included the preliminary hearing transcript, and he admitted shooting and killing the victim.

**Appellant's Reply**

Appellant's counsel filed a reply and argued the trial court could not rely on the preliminary hearing transcript to make factual findings for the prima facie determination, and an evidentiary hearing was required.

**The Court's Prima Facie Hearing**

On September 15, 2023, the trial court conducted the hearing on whether appellant's petition stated a prima facie case for resentencing.

The prosecutor stated the trial court could review the preliminary hearing transcript "for context only, not for fact finding, not for credibility" to make the prima facie determination. The prosecutor made this argument based on prior cases where there was only one gun used, the gun "was used to kill the victim, and the defendant was the only person who actually had that gun, then essentially, the defendant would not be eligible for [section] 1172.6 relief." The prosecutor argued appellant's case involved the same situation because there was "only one person, including the victim it would be two, who actually had anything to do with that gun. Ultimately, [appellant] admitted to killing him [by pleading to manslaughter], and also admitted that he's the one who killed him" by admitting the firearm enhancement.

Appellant's counsel argued the trial court could not make factual findings, credibility determinations, or weigh the evidence from the preliminary hearing to make the prima facie finding, and an evidentiary hearing should be held.

The trial court denied the petition and stated that appellant failed to show a prima facie case for relief, and did not make any specific findings.

On September 15, 2023, appellant filed a timely notice of appeal.

## DISCUSSION

In their initial appellate briefing, the parties addressed whether the trial court could rely on the preliminary hearing transcript as part of the record of conviction to make the prima facie determination, or if such reliance involved factual findings that required an evidentiary hearing. After *Patton* was decided, this court requested supplemental briefing. Appellant asserted an evidentiary hearing was still required because the preliminary hearing raised the inference that another person was the gunman, since Ireland could have gained control of the gun during the fight with appellant and accidentally shot himself. The People argue the preliminary hearing evidence showed appellant was the actual killer and ineligible for resentencing.

## DISCUSSION

### I.  Section 1172.6

We begin with the provisions of section 1172.6. "Effective January 1, 2019, Senate Bill No. 1437 (2017−2018 Reg. Sess.) amended the felony-murder rule by adding section 189, subdivision (e). [Citation.]  It provides that a participant in the qualifying felony is liable for felony murder only if the person:  (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.]  The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v.*

9.

*Harden* (2022) 81 Cal.App.5th 45, 50–51 (*Harden*); *People v. Strong* (2022) 13 Cal.5th 698, 707–708; *People v. Reyes* (2023) 97 Cal.App.5th 292, 295.)

Effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) amended former section 1170.95 in several respects, codified the holding in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), and clarified that, in some circumstances, the same relief available to petitioners convicted of murder is also available to petitioners convicted of attempted murder or manslaughter, and addressed various aspects of the petition procedure, including the petitioner's right to counsel, the standard for determining the existence of a prima facie case, the burden of proof at the hearing to determine whether a petitioner is entitled to relief, and the evidence a trial court may consider at that hearing. (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 892; *People v. Birdsall* (2022) 77 Cal.App.5th 859, 865 & fn. 18.)  On June 30, 2022, the statute was renumbered as section 1172.6 without further substantive changes.  (*People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.)

Section 1172.6, subdivision (a) thus states a person may file a petition for resentencing if "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter . . . ."

As relevant herein, the petitioner must declare "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.  [¶]

(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3); *Patton*, *supra*, 17 Cal.5th at p. 558.)

"[W]hen a petitioner files a facially sufficient petition, the trial court must appoint counsel to represent the petitioner. The trial court may consider the record of conviction to determine whether the petitioner makes a prima facie showing only after the appointment of counsel and the opportunity for briefing has occurred." (*People v. Reyes*, *supra*, 97 Cal.App.5th at p. 298; *Patton*, *supra*, 17 Cal.5th at p. 559.) In making the prima facie determination, the trial court "may look at the record of conviction . . . to determine whether a petitioner has made a prima facie" showing. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "The record of conviction will necessarily inform the trial court's prima facie inquiry . . . allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that . . . culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process. [Citation.] [¶] While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, at p. 971.)

Where the record of conviction shows the defendant was the actual killer, he was not convicted under a now-invalid imputed malice theory, he is ineligible for relief as a matter of law, and no evidentiary hearing is required. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 233; *People v. Strong*, *supra*, 13 Cal.5th at p. 707; *People v. Garcia* (2022) 82 Cal.App.5th 956, 973; *Harden*, *supra*, 81 Cal.App.5th at pp. 47–48, 52.)

If the trial court erroneously denies the petition without an evidentiary hearing, the error is harmless if the defendant is ineligible for resentencing as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at pp. 973–974.)

## II. *Patton*

At the time of the hearing on appellant's petition, it was settled that when a petitioner is convicted after a jury trial, the trial court may rely on the record of conviction to make the prima facie determination pursuant to section 1172.6, and the record of conviction includes the charging documents, jury instructions, and verdicts. (*Harden*, *supra*, 81 Cal.App.5th at pp. 50, 54–55; *People v. Flores* (2023) 96 Cal.App.5th 1164, 1170.)

However, appellate courts disagreed about the record of conviction when a petitioner is convicted after entering a plea and subsequently files a section 1172.6 petition for resentencing. Some courts held the preliminary hearing transcript was part of the record of conviction and could be reviewed to make the prima facie determination. There were also decisions that held reliance on the preliminary hearing necessarily required making factual findings, and an evidentiary hearing was required to determine if a petitioner who was convicted after a plea was eligible for resentencing. (*Patton*, *supra*, 17 Cal.5th at pp. 561–652.)

In *Patton*, the California Supreme Court resolved this disagreement and held that in making the prima facie determination, the preliminary hearing transcript "preceding a guilty plea" is part of the record of conviction and the trial court may "rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute

[the petitioner's] conclusory, checkbox allegations." (*Patton*, *supra*, 17 Cal.5th at pp. 564, 568.)

*Patton* acknowledged the trial court previously "placed limits on the use of preliminary hearing transcripts to prove disputed facts, but these limits are inapplicable here." (*Patton*, *supra*, 17 Cal.5th at p. 568.) *Patton* explained resolution of the prima facie inquiry may not "call for resolution of a factual dispute" but, "[r]ather than resolving a contested factual dispute, statements within … [*the*] *preliminary hearing transcript* [*may*] *contribute*[] *specific factual assertions about* [*the petitioner's*] *conviction—namely, that it was premised on him being the sole shooter*. [A petitioner's] conclusory checkbox allegations alone could not create a factual dispute about whether he played a meaningfully different role in the [completed or attempted homicide]." (*Patton*, *supra*, 17 Cal.5th at pp. 568–569, italics added.)

*Patton* held previous appellate rulings which prohibited reliance on the preliminary hearing transcript "overlooked the issue-framing role a transcript can play" in making the prima facie determination. (*Patton*, *supra*, 17 Cal.5th at p. 569.)

> "[A] section 1172.6 petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not … made a prima facie showing. Where facts from the record of conviction are undisputed, accepting them over contrary legal allegations that are merely conclusory is not ' "factfinding involving the weighing of evidence or the exercise of discretion." ' [Citations.] Indeed, denial of a resentencing petition because its conclusory allegations do not counter the facts in a record of conviction that forecloses relief is a determination that the petition's allegations are legally deficient, 'not a ruling on the merits of the issues which petitioner has attempted to raise.' " (*Patton*, *supra*, 17 Cal.5th at pp. 565–566.)

*Patton* explained that "petitioners need not, at the prima facie stage, meet an evidentiary burden of proof to establish entitlement to relief, such as the burden of proof applicable to the People if trying to defeat relief at the later section 1172.6,

subdivision (d)(3) [evidentiary] hearing. *Rather, petitioners confronting a record of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail.* It follows from what we have said already that should a trial court encounter a material fact dispute, the court may not resolve that dispute at the prima facie stage and should instead grant petitioner an evidentiary hearing, assuming relief is not otherwise foreclosed." (*Patton*, *supra*, 17 Cal.5th at pp. 566–567, italics added.)

"Thus, while it may be that a record can ' " 'refut[e] the allegations made in the petition' " ' [citation], it would be somewhat imprecise to say that evidence in a preliminary hearing transcript, offered at the prima facie stage, ' "irrefutably *establishes*" ' any particular fact to any particular standard of proof [citation]. A conclusion that a record refutes an allegation at the prima facie stage is not, moreover, a conclusion about the strength of evidence in the record." (*Patton*, *supra*, 17 Cal.5th at p. 567, fn. 10.)

> "A dispute regarding the basis of a conviction might arise if, for instance, a petitioner points to specific facts that identify someone else as the direct perpetrator. At the least, as the People note . . . , this may come from the record itself. *But absent specific facts, no such dispute arises . . . from mere latent, speculative possibilities; that is, a hypothetical alternate direct perpetrator cannot be conjured from thin air or a legal conclusion.*" (*Patton*, *supra*, 17 Cal.5th at p. 567, italics added.)

*Patton* further explained that a petitioner has multiple opportunities to proffer specific facts to raise such a dispute because "the initial petition itself, which is not limited to the allegations found on preprinted forms, begins, but does not end, the inquiry. Section 1172.6, subdivision (c) expressly anticipates a petitioner's reply to the People's response and, '[a]fter the parties have had an opportunity to submit briefings,' arguments at a hearing." (*Patton*, *supra*, 17 Cal.5th at p. 567.) The trial courts should "implement section 1172.6 so that petitioners have 'meaningful' opportunities to present their

petitions.  [Citations.]  Nothing in subdivision (c), for instance, has dissuaded courts from, as appropriate, permitting a substitute petition for resentencing after appointment of counsel." (*Patton*, at p. 568.)**4**

Patton disapproved of prior appellate decisions that "conditioned the use of preliminary hearing transcripts [to make the prima facie determination] on whether a petitioner previously admitted the truth of testimony contained therein or stipulated to the transcript as the factual basis of a plea." (*Patton*, *supra*, 17 Cal.5th at p. 569, fn. 12.) *Patton* applied these conclusions to affirm the trial court's denial of the defendant's petition in that case, because the defendant's petition "offered only conclusory allegations of entitlement to resentencing relief under section 1172.6 in response to a record of conviction that the lower courts viewed as foreclosing it because that record foreclosed the conclusion that [the defendant's] conviction was under a now-invalid homicide theory.  [The defendant's] petition contains only a checkbox declaration with legal conclusions, he submitted no reply, and he made no argument when invited to do so at the prima facie hearing.  After determining the facial validity of a resentencing petition and before ordering an evidentiary hearing, a trial court may properly . . . reference the record of conviction to ' " 'refut[e]' " ' [citation] conclusory allegations in furtherance of its statutorily required screening function at that juncture of a section 1172.6 proceeding. The Court of Appeal correctly concluded this is not impermissible factfinding and

---

**4**      *Patton* cautioned that "[t]he extent to which it might be proper to rely on a preliminary hearing transcript *at the evidentiary hearing* under section 1172.6, subdivision (d) is not before us.  At such a hearing, the statute permits consideration of 'evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed' except 'hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 . . . , unless the evidence is admissible pursuant to another exception to the hearsay rule.' " (*Patton*, *supra*, 17 Cal.5th at p. 569, fn. 11, italics added.)

correctly concluded [the defendant] had not, on the record before it, made a prima facie showing." (*Patton*, *supra*, 17 Cal.5th at p. 569.)

While *Patton* held the trial court's prima facie finding as to the defendant's petition was not erroneous, it granted the defendant's request "to be permitted to plead additional facts on remand" and, "out of an abundance of caution," ordered remand to the court "with directions for that court to consider an amended petition should [the defendant] within 30 days of that remand, seek to file one." (*Patton*, *supra*, 17 Cal.5th at pp. 569–570.)

## III. Analysis

In his post-*Patton* supplemental briefing, appellant acknowledges the holding in *Patton* and that there was evidence from the preliminary hearing that tended to show appellant was the actual killer. However, appellant argues an evidentiary hearing is still required because there was no eyewitness testimony about the shooting, and the preliminary hearing evidence raised the inference that as appellant and Ireland fought over the gun, Ireland may have pulled the trigger and accidentally shot himself in the head, which would be consistent with appellant's statements that they were friends and appellant never pointed the gun at Ireland. In the alternative, appellant requests remand to file a supplemental petition as permitted in *Patton*.

The preliminary hearing transcript in this case contained specific factual assertions that appellant was charged with murder and pleaded to manslaughter as the actual shooter. While she later attempted to recant her statements, Baldwin reported to the police that appellant said he was leaving town because he shot Ireland in the head when they were in the Dodge Dart. Baldwin knew the Dodge Dart belonged to a man named "Anthony" or "Jason" and his girlfriend, and they were stationed at Lemoore. Baldwin had been in the car after Ireland died, and she saw a bullet hole and some "nasty" stuff on the backseat's interior ceiling.

Appellant was arrested while driving the Dodge Dart, there was a bullet hole in the car's interior roof lining about two inches above the rear passenger-side window, and Ireland's blood was found on the car's rear door frame. The car was registered to "Anthony" and his girlfriend, they had been in the Navy, and Baldwin identified photographs of the registered owners as the two people who were associated with that car.

Moreover, appellant admitted in his postarrest interview that he was in the backseat of the car with Ireland, he had a gun in his waistband, Ireland wanted the gun, and they were "tussling" over it. Appellant said Ireland reached for the gun, and appellant pulled the gun from his waistband and raised it. Appellant claimed he did not point it at Ireland but it was suddenly discharged and Ireland was shot. Ireland was killed by a single close contact gunshot to the left temporal area of his head, and the impression of the barrel, or the stippling or gunshot power, was visible on the entry wound.

Based on the record of conviction, appellant was ineligible for relief because he was the actual killer, and his conclusionary checkbox allegations in his preprinted form petition did not create a factual dispute to require an evidentiary hearing.

As in *Patton*, however, we grant appellant's request, "out of an abundance of caution," to remand the matter to permit him to file a supplemental petition to plead "additional facts on remand," since he did not have the benefit of *Patton*'s guidance during the prima facie hearing in this case. (*Patton*, *supra*, 17 Cal.5th at pp. 569–570; *People v. Glass* (2025) 110 Cal.App.5th 922, 925.)

## DISPOSITION

The matter is remanded to the trial court with directions for that court to consider an amended petition should appellant, within 30 days of that remand, seek to file one. (*Patton*, *supra*, 17 Cal.5th at p. 570.) We otherwise affirm the trial court's order of September 15, 2023.

17.